AHRENFELDT, BY HER NEXT FRIEND, v. AHRENFELDT.

Under the provision of the statute (2 *R. S.* 147, § 49, sub. 3,) there must be proven both an abandonment and a refusal or neglect to support the wife.

The malicious abandonment of the Scotch and Dutch laws, is an abandonment wilful, and with intention to live apart.

The intention to abandon is the criterion; and it may be gathered, not only from protracted absence, but from other facts.

In January, a husband separates from his wife. He provides for her, though scantily, till April, when he withdraws all support. She files her bill in June for separation, on the ground of abandonment, and refusal or neglect to provide; and he makes no offer to receive or live with her: *Decree* for separation granted.

BILL by wife against her husband for a separation, on the ground of abandonment, and neglect to provide for her.

The allegations in the bill were met, and generally denied; and the testimony, on one side, somewhat conflicted with the evidence on the other. The husband separated from her in the month of January, one thousand eight hundred and thirty-seven; and they continued apart until

the bill was filed, in the month of June of the same year. He provided for his wife, (more or less,) until April of that year.

The following letter, made an exhibit, was written by the defendant to the complainant.

" After having received the two tumblers requested, I " most cheerfully enclose you ten dollars, which will be suffi- " cient to remove your effects to your new abode, which I " have not the pleasure to know as yet. The conversation " I have had with your brother yesterday, has brought me " to a conclusion, that it will be best for both of us to have " the affair firmly and legally settled between us, when I " am perfectly willing to maintain you and the children. " I wish, at the same time, not to be any further annoyed, " nor to have it thrown up to me as if I did not give you " any thing. When, therefore, I now cease to give you " any further means, it is only done until such time as you " are ready for such settlement, which is to fix a sum for " your entire maintenance and expenses, all in all, payable " to you weekly by a third person. Though I am as re- " sponsible for the welfare of our children as well as you " are, I see plainly that it is impossible, under the present " circumstances, for both of us to practice this responsibility " of bringing them up. I am not only willing, but I sin- " cerely wish to have the children under my care and gui- " dance ; and when I leave this point to your consideration, " I entreat you not be hasty or passionate, but to reflect " calmly and reasonably, whether the children will do " better with yourself or with me. That I am as much " entitled to the children as you, can leave no matter of " doubt, but I refrain from all forcible steps, considering " them as unbecoming to either party ; but by determining " on this point, I wish you to take the advice of some per- " son of sound judgment : for whosoever of us undertakes " to bring up the children, takes the responsibility from " the other, and has one day for the fulfilment of his duty " to answer to our Eternal Father.

" Finally, I wish whatever settlement is made between " us is to be done by a legal divorce ; the tie is broken and

" happiness can never be restored between us ; for which " reason it is much better to live as happy as possible sepa- " rate, than to lead an unhappy life together and show a " bad example to our children.

" CHARLES AHRENFELDT.

" New-York, the 29th April, 1837.

" To Mrs. ELIZA AHRENFELDT."

*Mr. Nash*, for the complainant.

*Mr. Ellingwood*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR :—The bill in this cause is filed under the provision of the Revised Statutes, that a limited separation may be decreed upon the abandonment of the wife by the husband, and his refusal or neglect to provide for her. (2 *R. S.* 147, § 49, sub. 3.) A similar clause was contained in the law of 1813. (2 *R. L.* 20, § 11.) I do not know of a case in our own court turning exclusively upon this provision. Some light may be obtained from the laws of other states.

In Kentucky there is a statute, that a decree of divorce in favor of a wife may be pronounced, when the husband shall have left her, with the intention of abandonment, for the space of two years. (1 *Dig. St.* 442.) A suit for alimony or support may, however, be sustained when a year has elapsed from the abandonment. (*Ibid. and Butler* v. *Butler*, 4 *Little's Rep.* 201.) In *Fishli* v. *Fishli*, (2 *Little*, 337,) it was decided that an abandonment for the space of two years was alone a good ground for a divorce, and that the right of the wife was not lost by an offer to support her, unless accompanied by an offer to receive and acknowledge her as his wife. If the conduct of the wife is such as to excuse an abandonment, but the husband continues to support her, the court will not decree her alimony independent of the statute, and it is also held, that the court has jurisdiction to decree her alimony independent of the act of the legislature. (*Butler* v. *Butler*, 4 *Little*, 201.)

The Scottish law, from a very ancient period, has adopt-

ed the principle of this statute. By an act of 1513, it was provided, that in case of the husband or wife deserting from the conjugal society without any reasonable cause, established by the decree of a competent court, and remaining in desertion with malicious obstinacy for the space of four years, notwithstanding all private admonitions from the party willing to adhere, that the spouse so offending may be in the first place prosecuted for adherence, and after proceeding to sentence of ex-communication, a divorce should be competent on these grounds, and the offending party should forfeit all interest in the goods in communion. (*Ferguson's Consistorial Law of Scotland*, p. 174. *Erskine's Inst.* b. 1. tit. 6, § 14.) So, by the Dutch law, if either of the consorts wilfully abandons the other for a long time without any cause, and without any intention of returning, a divorce is allowed on that account. (*Van Leuwen's Roman Dutch Law*, p. 85.) The author cites a case before the alderman of Leyden, in 1662, in which the wife went away from the husband, and after the third and fourth legal description and summons had been issued without receiving any answer or vindication, a malicious desertion was declared to have taken place, and he was released from the matrimonial tie. In a note is a reference to the local law of *Overyssel*, (part 2, tit. 1. art. 18,) which likewise appears in the church ordinance of Geneva, " which is continually observed in France."

By the Prussian code, marriage may be dissolved when one of the married persons maliciously forsakes the other. It must be proven that it was the other party's intention really to abandon the complainer. It is important to notice, that where the intention to abandon is doubtful, an absence of two years and other circumstances must be established. (*Frederician Code*, part 1, b. 2. tit. 3, art. 1, sec. 6.)

Under the provision of our statute, it is necessary that there should be both an abandonment and a refusal or neglect to furnish the means of support. The allegation

1839.

Ahrenfeldt
v.
Ahrenfeldt.

of refusal to support is distinctly put in issue by the answer. A separation from her is admitted.

The testimony shows, that the complainant was at Sekauket from June in one year to May in the next, residing with her brother-in-law. It is proven that she was there in a destitute condition, suffering occasionally for want of fuel.

In the fall and winter she was destitute of clothing. She was ill for a part of the time, and in need of comforts which were supplied by neighbors. It appears that the defendant was there once or twice during that period. It may be observed, that Thomas Johnson states that the complainant lived in Bleecker-street, and was abandoned by the defendant in December, 1835 ; and that through December, 1835, January and February, 1836, she was left destitute. He helped her all he could. There is a mistake in the dates, and the evidence of John F. Farley shows, that the actual period of the residence at Sekauket, was from June, 1834, to May, 1835; not from 1835 to 1836. His testimony also establishes, that the defendant rented the house of him, at about $40 a year rent ; that the witness had defendant's assent to supply her with necessaries at his expense, which he did ; that she had the opportunity of sending to him for such things as she wanted. He does not know that she was ever refused ; that nurses were employed and he supposes paid by defendant ; that the amounts allowed were pinching ; too small. Whether this originated in her being backward, or it was his choice, he cannot say. Again—he states that at one period he had orders to send her wood, which he had no opportunity of doing. This was not a neglect chargeable to the defendant.

Notwithstanding the general vagueness of the testimony of this witness, it gives a very different aspect to the case, so far as relates to the residence at Sekauket. I deduce from it that there was some understanding to live apart, at least temporarily, for reasons not disclosed, but no abandonment, and no refusal or neglect to provide for her sup-

port, although the allowance may have been scanty and penurious.

It next appears that in the years 1835, 1836, the parties lived together in Bleecker-street, in this city. Platt, the witness, resided there about nine months. He states that the comforts of life were then provided by the defendant. It appears that the second floor of this house was hired of Maze, and that the defendant paid him over a hundred dollars rent; and that he paid one year's rent, though he was not there all the time. This occupation was from May, 1835, to May, 1836. It does not appear at what time the defendant left this house. A quarrel took place between the parties, when he left it. Platt, however, states that he sometimes carried money, six dollars a week, to her from the defendant; and the clerk corroborates him. The witness contradicts Thomas Johnson as to her situation, and the provision for her comfort when in Bleecker-street. By the testimony of Strybing, it appears that the defendant went to Europe in March, 1836, and returned in August. He swears that in the defendant's absence he paid her by his orders from 10 to 12 dollars a week. He also states that he boarded with complainant in Watts-street from the first of May, 1836, to the 28th February, 1837. She appeared at all times comfortably provided for. The final separation is stated in the answer to have taken place in January, 1837. She left Watts-street in May, 1837, and appears to have lived since with Mrs. Compton in New-Jersey.

I understand from the testimony, that after the defendant left the complainant in Watts-street, he allowed five dollars a week to her, which continued until the letter of the 29th of April, 1837, was written.

The letters from the defendant may next be examined. The first, of April 11th, 1837, speaks of her complaints, and states that charges for a servant and mantuamaker will not be paid henceforth. The next, of April 26th, speaks of a bill for groceries contracted by her; that he will pay it, but she must pay all her expenses with the money he sends her, which is sufficient to maintain her

and the children comfortably. Should she contract further bills in his name, he should advertise in the papers forbidding all persons to trust her. It appears from Hill's testimony, that in June, 1837, the defendant purchased about 40 or 50 dollars worth of calicos, &c., necessary for a family.

On the 29th of April, 1837, the defendant writes the important letter marked C. In that he states his wish to have the affair finally and legally settled. While perfectly willing to maintain her and the children, he does not wish to be further annoyed. " When therefore I now cease to " give you any further means, it is only done until such " time as you are ready for such settlement, which is to " fix a sum for your entire maintenance and expenses, all " in all, payable to you weekly, by a third person." The letter proceeds, with the expression of very proper feelings respecting the children, and adds : " Finally, I wish what- " ever settlement is made between us, is to be done by a " legal divorce. The tie is broken, and it is better for us " to live as happy as possible separate, than to lead an un- " happy life together, and show a bad example to our chil- " dren." On the ninth of June, 1837, the advertisement forbidding all persons to trust the defendant, appeared in the public papers. This was after the bill was filed.

The result of this examination of the testimony is, that no case of abandonment or neglect to provide for the wife is made out prior to April, 1837. That in January, 1837, he separated from her, and they have not since been reunited. That down to the letter of the 29th of April, he did not refuse to support her. The amount may have been inadequate, but considering that, until May, she was living in the house in Watts-street hired by him, I cannot say it was so inadequate, as to be equivalent to a denial of support. After May to the filing of the bill, I am left to infer that he did not support her, notwithstanding the allegation in the answer, which is not established, of his hiring a lodging, and her enjoying it. The answer was sworn to the 26th of June, 1837. But in this answer, there is no offer to receive the wife or live with her. The defendant

1839.
Ahrenfeldt
v.
Ahrenfeldt.

could have made that offer in a supplemental answer at any time. I infer that the intention to live apart has never varied. Now this appears to be within the meaning of the statute of Kentucky, a leaving with the intention of abandonment, and to answer the sense of *malicious abandonment,* in the Scotch and Dutch law. The intention is the criterion, and as the time is not prescribed by our statute, that intention may be gathered from other facts, as well as protracted absence. The rule of the Prussian code before noticed, which makes an absence of two years evidence only of an intention to abandon, is strong upon this subject. The refusal or neglect to maintain the complainant, dates from the letter of 29th of April. The subsequent support has been given under the usual orders of the court for alimony, and even if in the answer he had fully offered a support, it would not have been sufficient, unaccompanied by an offer to receive her. (See *Fishli* v. *Fishli,* before cited.) I am of opinion, that this case is brought within the provisions of the statute.

There must be a reference to a master, to ascertain and report whether the complainant or the defendant is the most fit and proper person to have the custody and charge of the children of the marriage, having regard to their age and sex respectively, as well as their interest. Also, to ascertain and report, what will be a proper sum to be allowed by the defendant, for the permanent support of the complainant, and for the support of such child or children, if any, as may, in the opinion of the master, be properly left in the care of the complainant, distinguishing the amounts to be allowed for the support of the complainant, and of such child or children respectively. The master to report all the testimony taken before, with his reasons for such conclusion as he shall come to. The evidence taken in the cause may be read upon such matters of inquiry before the master. All further questions to be reserved, until the coming in of his report.